## James Wilbur v. Luther J. Flood.

*Witness: Cross-examination: Record of Conviction.* The cross-examination of a witness is not confined to matters in issue, but may include such collateral questions as will enable the jury to obtain an insight into his character and history, and thus to judge of his credibility; and the Court has power to guard against the abuse of this right when necessary.

The fact that a witness has been confined in a State prison may be inquired into upon such cross-examination, without producing the record of his conviction; as a party cannot be expected to know in advance who will testify, or what may be the character of the adverse witnesses; and might otherwise have no adequate means of testing their credit.

WILBUR *v.* FLOOD.

*Rescission of contract: Reasonable time: Replevin, Affidavit: Service of writ, be-*
*fore tender.* Where land has been conveyed in exchange for personal property,
and the grantee seeks to repudiate the bargain for fraud, he cannot reclaim his
goods without tendering a reconveyance; and a mere offer to "*trade back,*"
without such conveyance or tender, is no rescission.

Where he made affidavit and sued out a writ of replevin for the goods, be-
fore making tender of a deed, although it was served after such tender, it was
held his suit was premature, as the cause of action in replevin must exist
when the affidavit is made.

Any unnecessary delay to rescind such a contract will cut off the right of
the party complaining of the fraud; and in the present case a delay of fifteen
months was held unreasonable.

*Heard July 10th. Decided July 11th.*

Error to St. Joseph Circuit.

This was an action of replevin to recover the possession
of certain chattels which Flood had exchanged with Wil-
bur for lands, he, Wilbur, had failed to convey. Judg-
ment was rendered for the plaintiff.

The case was removed by writ of error and bill of ex-
ceptions.. The facts and rulings of the Court below are
stated in the opinion.

*H. F. Severens,* for plaintiff in error.

1. It is competent to ask a witness on cross-examina-
tion whether he has ever been confined in the State Prison.

It is obvious that the purpose of such a question is to
discredit the witness before the jury, by showing him to
have been guilty of some criminal offense. It is not the
imprisonment but the guilt that fixes the stain. This can
only be shown by the record of conviction.—1 *Greenl. Ev.*
§ 457; 24 *N. Y.* 298; 46 *Barb.* 127.

2. Before the plaintiff could bring replevin, he must
rescind the contract. This, it is claimed, on the part of
the plaintiff, was done, so far as it could be done by him,
by tendering the reconveyance to Wilbur. But this was
not done until after the issuing of the writ. A plaintiff
cannot get out his writ, and then make the cause of ac-
tion for which he sues. The suit is commenced by the
issuing of the writ.—*Comp. L.* §§ 4108, 5010; 1 *Doug.* 330;
3 *Mich.* 531; 10 *Id.* 508.

WILBUR *v.* FLOOD.

3. The testimony of the plaintiff showed that he ascertained the facts on which he claimed to rescind, in June, 1864, and also that he did nothing toward rescinding until September, 1865—fifteen months. Assuming these facts to be true, the Court should have charged as matter of law that the plaintiff did not rescind within a reasonable time.—4 *Mich.* 508; 2 *Pars. on Cont.* 190 *and n. i., 3d ed. and* 277-8-9 *and notes;* 2 *Denio,* 136; 14 *Barb.* 594; 21 *Id.* 82; 6 *Metc.* 68, 74; 9 *Gill.* 156; *Chitty on Cont.* 814, 10*th Am. Ed.*; 7 *Blackf.* 501.

If the jury found the facts assumed in the request, they presented a question of law upon which direct instruction should have been given.—4 *Mich.* 336; 5 *Id.* 501.

If the question was a mixed one of law and fact, the request was proper.

4. If it is not correct to say that this question of reasonable time was one of law, then there was error in charging that the plaintiff did tender the reconveyance within a reasonable time. The question, if one of fact, was for the jury. See authorities cited under 3d point, and 3 *Greenl.* 30; 4 *Fost. N. H.* 282.

The mere " offer to trade back," and refusal on the part of defendant was very far short of attempting a rescission.

*Soule, Mason & Allison,* for defendant in error.

CAMPBELL J.

An action of replevin was brought by Flood against Wilbur to recover certain chattels which Flood had exchanged with Wilbur for lands which the latter had failed to convey, having substituted a different description. The facts as claimed were in substance these. In exchange for the horses, wagon and harness, which are the subjects of this suit, Wilbur was to deed a clear title to the northeast ten acres of a certain forty acre lot which he said he owned. About the beginning of June, 1864, Wilbur gave Flood a

deed of an undivided fourth of the forty acres, instead of the specified ten acres, and it was four or five days before the latter discovered the error, when he "offered to trade back, and Wilbur would not do it."

No further steps appear to have been taken until this suit was commenced. The affidavit was made September 2d, 1865, and the writ issued September 5th, and delivered to plaintiff's attorneys. On or about the 18th of September, a clerk of the attorneys went with the Sheriff to Wilbur, and tendered him a deed of the premises which he had conveyed to Flood. Upon his refusal to accept it, the clerk gave the writ to the Sheriff, who served it.

Defendant was sworn as a witness in his own behalf, and controverted the plaintiff's case. Upon cross-examination he was allowed, against objection, to be asked whether he was ever confined in the State Prison, and an exception is taken to this ruling. It is claimed to have been erroneous, as an attempt to discredit the witness by improper means, and to prove by parol what rests in record evidence. We do not think the objection tenable. It has always been found necessary to allow witnesses to be cross-examined, not only upon the facts involved in the issue, but also upon such collateral matters as may enable the jury to appreciate their fairness and reliability. To this end a large latitude has been given, where circumstances seemed to justify it, in allowing a full inquiry into the history of witnesses, and into many other things tending to illustrate their true character. This may be useful in enabling the court or jury to comprehend just what sort of person they are called upon to believe, and such a knowledge is often very desirable. It may be quite as necessary, especially where strange or suspicious witnesses are brought forward, to enable counsel to extract from them the whole truth on the merits. It cannot be doubted that a previous criminal experience will depreciate the credit of a witness to a greater or less extent, in the judgment of

all persons, and there must be some means of reaching this history. The rules of law do not allow specific acts of misconduct or specific facts of a disgraceful character to be proved against a witness by others. He may be proved by record evidence to have been convicted of infamous crimes, but not to have done other infamous deeds, nor to have undergone personal disgrace. And even as to previous conviction of infamous crimes, the rule is seldom of any great service, because no one can be expected to know in advance what witnesses may appear, nor what may have been their history. Unless the remedy is found in cross-examination, it is practically of no account.

It has always been held that within reasonable limits a witness may, on cross-examination, be very thoroughly sifted upon his character and antecedents. The Court has a discretion as to how far propriety will allow this to be done in a given case, and will or should prevent any needless or wanton abuse of the power. But within this discretion we think a witness may be asked concerning all antecedents which are really significant, and which will explain his credibility, and it is certain that proof of punishment in a State prison may be an important fact for this purpose. And it is not very easy to conceive why this knowledge may not be as properly derived from the witness as from other sources. He must be better acquainted than others with his own history, and is under no temptation to make his own case worse than truth will warrant. There can with him be no mistakes of identity. If there are extenuating circumstances, no one else can so readily recall them. We think the case comes within the well established rules of cross-examination, and that the few authorities which seem to doubt it, have been misunderstood, or else have been based upon a fallacious course of reasoning, which would, in nine cases out of ten, prevent an honest witness from obtaining better credit than

an abandoned ruffian. We are satisfied there was no error in admitting this testimony.

The Court was also asked, but declined, to charge that if the writ in this cause was issued before the reconveyance to Wilbur was tendered, the plaintiff could not maintain his action. The Court also declined to charge that plaintiff was bound to rescind within a reasonable time after he discovered the facts complained of, and that the period between June, 1864, and September, 1865, was not a reasonable time; but charged that if he offered to trade back within four or five days after discovering the mistake in the deed, and defendant refused, the tender of a reconveyance in September, 1865, was within a reasonable time.

In all these respects we think the Court erred. A mere offer to trade back is no rescission of a contract. The party aggrieved must do what he can to place the other *in statu quo*, and where it is possible this can only be done in cases like the present by a return, or a tender of a return, of what he has received in exchange for what he has given. In the case of land, this can only be done by conveyance. And the property cannot revest without such an attempt to rescind. Under our statutes the affidavit is essential before a writ of replevin can be served, and it must show a wrongful detention of plaintiff's property. But till the deed was tendered plaintiff could have no property in the chattels, and the suit was prematurely brought.

But there was also error in respect to the ruling concerning diligence. It is an inflexible rule that a party complaining of fraud must be guilty of no unreasonable delay in repudiating and getting rid of his contract. Where his object is to rescind it and reclaim his property, he is bound to lose no time unnecessarily in his action to that end. While no particular period can be laid down for all cases, yet it is quite well settled that no unnecessary delay can be permitted; and in the absence of some proof to excuse it, any considerable lapse of time must be conclusive evidence of

neglect. Where such proof is introduced, each case must depend upon its own circumstances. 'It would be absurd to suppose that a party could not prepare and tender a deed in his own neighborhood in a few days, under any ordinary circumstances. And a delay of fifteen months in such a case can only be regarded as very great negligence, which must preclude the party from treating the contract as rescinded, and the property as having become restored as if no contract had ever been made.

The judgment below must be reversed with costs and a new trial must be.granted.

CHRISTIANCY and COOLEY JJ. concurred.

MARTIN CH. J. did not sit.