(No. 36121.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* CORNELIUS HYMAN, Plaintiff in Error.

*Opinion filed March 23, 1962.*

RONALD M. GLINK, of Chicago, appointed by the court, for plaintiff in error.

WILLIAM G. CLARK, Attorney General, of Springfield, and DANIEL P. WARD, State's Attorney, of Chicago, (FRED G. LEACH, Assistant Attorney General, and JOHN T. GAL-LAGHER and DEAN H. BILTON, Assistant State's Attorneys, of counsel,) for the People.

Mr. JUSTICE DAILY delivered the opinion of the court:

At a bench trial in the criminal court of Cook County, the defendant, Cornelius Hyman, was adjudged guilty of unlawfully possessing narcotic drugs and was sentenced to the penitentiary for a term of not less than two nor more than eight years. Upon writ of error he contends the evidence was insufficient to establish his guilt beyond a reasonable doubt.

During the afternoon of December 30, 1959, three Chicago police officers attached to the narcotics bureau parked their unmarked automobile and watched as defendant made several trips from his home on Vernon Avenue to a nearby tavern on 43rd Street. Officer Clemie Paschal was seated behind the wheel of the vehicle and his partners, officers John Smith and James Gary, were in the front seat with him. At approximately 4:00 P.M. defendant again left his home and walked toward the tavern. This time the police followed in their car and, just as defendant reached the intersection, Gary jumped out of the vehicle before it had completely halted and told defendant he was under arrest. Smith got out of the car immediately to assist Gary and it was the testimony of Paschal that while all of this was occurring, he saw defendant drop a small brown paper package to the ground. Smith picked up the package, found that it contained a white powder which field tested as a derivative of opium, and later took it to the crime laboratory where it was found to be heroin. Gary, in the meantime, searched defendant's person and found no narcotics.

At the trial of the cause Gary testified that he did not see defendant drop the brown packet, but that he did see Smith pick it up a short distance from the accused. Smith, the other officer, was away from Chicago during the trial and did not testify. Defendant, as a witness in his own behalf, denied that he had narcotics in his possession, or that he had attempted to dispose of any drugs at the time of his arrest.

Defendant's claim of insufficient proof is based upon al-

leged inconsistencies and contradictions in the testimony of Paschal and Gary which, he contends, renders their entire testimony unsatisfactory and unworthy of belief. Whereas Paschal testified that Smith was the first one out of the car at the time of the arrest, and that it was Smith who had field tested the contents of the package, it was the testimony of Gary that he was the first out of the car and that it was Paschal who had made the field test. In addition, defendant stresses as "inherently improbable" the circumstance that Paschal, who was in the car, would see the package dropped, while Gary, who was outside the car, made no such observation. Further, defendant points to inconsistent statements by Paschal as to the instant in which the package was dropped as showing the unsatisfactory nature of the proof against him.

We do not agree that the circumstances relied upon serve to destroy the credibility of the officers' testimony. All of the evidence indicates that the arrest and search was a swift happening that occurred in the space of a few seconds and, under such circumstances, it is not unusual that the participants would not recall or agree as to each minute detail. Paschal's statements that defendant dropped the package "after we told him he was under arrest" and "as we turned the corner," do not amount to material contradictions when we consider that Gary jumped from the car to make the arrest, and that Paschal then pulled the car around the corner before completely stopping. Similarly, since it was not denied that the package contained narcotics, the identity of the person who made the field test is of little significance.

Neither is it surprising that Paschal, seated in the auto some five feet away, made observations which Gary, who was jumping from the stopping auto to make the arrest, did not see. In a similar case, *People* v. *Austin,* 22 Ill.2d 587, a conviction was affirmed even though only one of two arresting policemen saw the accused drop narcotics to the ground, and we cannot say that a contrary result should be reached

in this case. Considering both the relative opportunities for observation and the old axiom that the hand is quicker than the eye, we see no inherent improbability or contradiction in the testimony of the two officers.

When a jury is waived, it is the function of the trial court to determine the credibility of witnesses and, upon review, we will not disturb its findings in such respect unless it is plainly apparent that an injustice has been done or that a reasonable doubt of guilt exists. (*People* v. *Meaderds*, 21 Ill.2d 145.) Neither circumstances is apparent in this record. Cf. *People* v. *Richardson*, 21 Ill.2d 435.

The judgment of the criminal court of Cook County is affirmed.

*Judgment affirmed.*